**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSEPH N. WHITE,

      Defendant-Appellant.

No. 12-3299

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:06-CR-10186-MLB-1)

David E. Johnson, Research and Writing Specialist (Jill M. Wichlens, Assistant Federal
Public Defender; Warren R. Williamson, Interim Federal Public Defender with him on
the supplemental brief) Denver, Colorado, for Defendant-Appellant. Joseph N. White,
pro se on the brief.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States
Attorney, with him on the brief) Topeka, Kansas, for Plaintiff-Appellee.

Before **HARTZ**, **BALDOCK**, and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

This appeal requires us to weigh in once again on a district court's authority to grant a sentence reduction under 18 U.S.C. § 3582(c)(2). Although Defendant Joseph White was initially charged with 16 drug- and gun-related counts, the government agreed to drop all remaining counts against him in exchange for his pleading guilty to possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Mr. White was then sentenced to a term of imprisonment outside of the advisory guideline range: after the sentencing court imposed the mandatory 60-month sentence for all § 924(c) convictions, it exercised its discretion and departed upward by an additional 87 months to account for the drug trafficking conduct that gave rise to Mr. White's § 924(c) conviction but which had been dismissed pursuant to his plea agreement. The 87-month figure was computed under the old crack cocaine guidelines as if Mr. White had in fact been convicted of possessing 21.35 grams of crack.

When the Sentencing Commission retroactively lowered the crack cocaine guidelines in response to the Fair Sentencing Act of 2010, Mr. White filed a pro se § 3582(c)(2) motion and requested that the district court reduce his 87-month departure to accord with the new crack cocaine guidelines. The rejected crack guidelines undoubtedly played a role in his originally imposed sentence, Mr. White argued, so he too should be eligible for a sentence reduction to correct that disparity. The district court disagreed. Recognizing that the Sentencing Commission has enacted a policy statement that expressly precludes courts from reducing a departure portion of an originally imposed sentence, the court denied Mr. White's sentence modification motion in a one-paragraph

2

order. Mr. White now appeals, advancing a full-fledged attack on that policy statement and its corresponding commentary.[1] According to Mr. White, the policy statement cannot mean what is says, either because it is inconsistent with the plain language § 3582(c)(2), or because it produces an absurd result, or if consistent and rational, because it violates the Constitution's nondelegation and separation of powers principles.

For reasons explained more fully below, however, we need not consider these next-level arguments because Mr. White has not shown, as he must, that he "has been sentenced to a term of imprisonment <u>based on a sentencing range</u> that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis added). It is well-settled in this circuit, and elsewhere, that the range upon which a sentence is "based" is the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category <u>but prior to</u> any discretionary departures. Although Mr. White asserts that <u>Freeman v. United States</u>, 131 S. Ct. 2685 (2011), requires us to reconsider our prior interpretation of § 3582(c)(2)'s "based on" clause, we explain herein why the pre-<u>Freeman</u> bar on reducing discretionary departures persists post-<u>Freeman</u>. While it therefore follows that the district court did not err in holding that Mr. White was ineligible for a sentence

---

[1] After Mr. White timely filed his pro se notice of appeal and accompanying briefs, this Court appointed the Federal Public Defender for the Districts of Colorado and Wyoming to represent Mr. White on appeal, and ordered supplemental briefing in the matter. <u>See</u> Tenth Circuit Order, February 26, 2012. Unless otherwise specified, we refer to the supplemental briefs throughout.

reduction under § 3582(c)(2), his motion should have been dismissed, not on the merits, but on jurisdictional grounds. Exercising jurisdiction under 28 U.S.C. § 1291, we thus vacate the district court's order denying Mr. White's motion and remand with instructions to dismiss for lack of jurisdiction.

## BACKGROUND

In August 2006, Mr. White was indicted on sixteen drug- and gun-related counts, including possession with intent to distribute crack cocaine within 1,000 feet of a school, in violation of 21 U.S.C. §§ 841, 860 (Count 4), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 12). In exchange for Mr. White pleading guilty to the gun possession charge (Count 12), the government agreed to dismiss all remaining counts against him, including the predicate drug trafficking offense that gave rise to the gun charge for which he was admitting guilt. In anticipation of sentencing, the United State Probation Office prepared a Presentence Investigation Report ("PSR") instructing that Mr. White's advisory guideline sentence was the statutorily-required 60-month mandatory minimum sentence under U.S.S.G. § 2K2.4.

Although neither party objected to the PSR, the sentencing court informed the parties by letter that it was contemplating an upward departure under § 5K2.21 in order to account for Mr. White's "Dismissed and Uncharged Conduct." Pointing to the commentary accompanying the § 924(c) guideline stating that it is "unusual" for an individual to be convicted of § 924(c) without also being convicted of the underlying

drug trafficking offense, the sentencing court suggested that an upward departure was warranted on the theory that "the Sentencing Commission would view this case as 'unusual' because the parties have agreed to allow defendant to plead guilty to the 924(c) count alone, rather than in addition to one or more of the underlying drug counts." Id. Mr. White objected to any such departure.

Following a hearing on the matter, the sentencing court informed the parties that it was adhering to its intent to depart upward from the mandatory 60-month advisory guideline sentence called for in the PSR. As the court's sentencing decision later explained,

> In an effort to formulate a sentence which will be acceptable under the advisory guidelines and the § 3553(a) factors, the court requested the probation officer to prepare a sentence calculation which takes into consideration the offense of conviction (count 12, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) which carries a statutory minimum and advisory guideline sentence of 60 months) plus the "underlying offense" charged in count 4, possession with intent to distribute cocaine base within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1) and 860.

R. Vol. 1 at 74-75 (emphasis added). Setting out two separate "[o]ffense [l]evel [c]omputations," the probation officer's new calculations were computed as if Mr. White had been convicted of both Count 4 and Count 12. Id. at 86. With respect to Count 12, the probation officer explained that all § 924(c) convictions carry "a statutorily required five (5) year minimum consecutive sentence." Id. Then, with respect to Count 4, he applied U.S.S.G § 2D1.2 and determined that possession with intent to distribute 21.35 total grams of crack yielded a base offense level of 29; after a 3-level reduction for

5

acceptance of responsibility, the probation officer calculated a total offense level of 26 for Mr. White's dismissed drug-trafficking conduct.  Id.

Expressly relying on those calculations at sentencing, the court determined that a controlling sentence of 147 months would satisfy the sentencing objectives of § 3553(a): "Using defendant's criminal history category II and a total offense level of 26, the advisory guideline range for count 4 becomes 70-87 months.  The court will impose a 60 month sentence on count 12 enhanced by an upward departure of 87 months for a controlling sentence of 147 months."  Id. at 75 (emphasis added).  This court upheld Mr. White's sentence on direct appeal, rejecting his claim that the sentence was procedurally and substantively unreasonable.   See United States v. White, 265 F. App'x 719 (10th Cir. 2008) (unpublished).

In 2010, Congress enacted the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010), and increased the quantities of crack cocaine needed to trigger mandatory minimum sentences for drug trafficking: the threshold for the five-year minimum was raised from 5 to 28 grams, while the threshold for the ten-year minimum was raised from 50 to 280 grams.  By leaving the same thresholds for powder cocaine at 500 and 5,000 grams respectively, the FSA effectively lowered the crack-to-powder sentencing disparity from 100-to-1 to 18-to-1.  See Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012).  Acting pursuant to its authority to amend the Guidelines in a manner consistent with the FSA, the Sentencing Commission responded by promulgating Amendment 750, which reduced the base offense levels for crack cocaine offenses by

6

increasing the weight of drugs associated with each base offense level in the crack cocaine guidelines. U.S.S.G App. C., Amend. 750. Had Amendment 750 been in effect when Mr. White was originally sentenced, and had the district court maintained the same reasoning that he employed when calculating the original upward departure, Mr. White's 21.35 grams of crack would have now yielded a dismissed conduct upward departure of 37-46 months, not 70-87 months as initially calculated. Amendment 750's changes to the Guidelines were made retroactive, taking effect on November 1, 2011. See U.S.S.G App. C., Amend. 759.

Citing these retroactive changes in the law, Mr. White petitioned the district court to reduce his sentence on October 26, 2012. His pro se motion asserted that a reduction was warranted under the FSA, Amendment 750, and 18 U.S.C. § 3582(c)(2). That statutory provision, which applies "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," provides an exception to the general bar against sentence modifications and affords district courts the discretion to reduce a qualifying defendant's term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis added). Asserting that it was "clear that [his] sentence was 'based on' [the since-amended] crack-cocaine guidelines," Mr. White requested that his sentence be reduced from 147 months to 106 months in order to reflect the changes to the

7

advisory guideline range on which his departure-based enhancement was based.[2]  R. Vol. 1 at 141.

The district court denied Mr. White's motion four days later, incorporating by reference an email from the probation office stating that "Mr. White is not eligible for a sentence reduction based on the retroactive crack cocaine amendment because the amendment does not have the effect of lowering his applicable guideline range of 60 months. 1B1.10(a)(2)(B)."  R. Vol. 1 at 144-45.  This appeal followed.

## DISCUSSION

As we set out to determine whether the district court was authorized to reduce Mr. White's term of imprisonment, we are mindful of Congress's directive that sentence modifications are to be the exception, not the rule.  See 18 U.S.C. § 3582.  After all, it is well-settled that "[a] district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so."

---

[2] Mr. White based his request for a 106-month sentence on an incorrect Guidelines calculation.  Working under the assumption that 21.35 grams of crack yielded an amended sentencing range of 46 to 57 months (not 37 to 46 months), Mr. White asserted that a 117-month sentence would be appropriate if the court desired to maintain the framework of Mr. White's original sentence (i.e., a 60-month mandatory minimum plus an upward departure at the top of the advisory guideline range (57 months)).  With that said, however, Mr. White went on to request that the court reconsider the § 3553(a) factors and instead impose a 106-month sentence, which he believed represented a 60-month mandatory minimum plus an upward departure at the bottom of the advisory guideline range (46 months).  Although Mr. White's incorrect Guidelines calculation resulted in him requesting a lesser sentence reduction than he might have otherwise been entitled, we need not determine how to construe his miscalculated request because we ultimately conclude that Mr. White is not eligible for a sentence reduction of any extent.

8

United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Absent the operation of

one of a few narrowly-defined statutory exceptions, therefore, "[f]ederal courts generally

lack jurisdiction to modify a term of imprisonment once it has been imposed." United

States v. Graham, 704 F.3d 1275, 1277 (10th Cir. 2013). One such exception, 18 U.S.C.

§ 3582(c)(2), was "enacted to permit defendants whose Guidelines sentencing range has

been lowered by retroactive amendment to move for a sentence reduction if the terms of

the statute are met." Freeman v. United States, 131 S. Ct. 2685, 2690-91 (2011)

(plurality). The question in this case is whether § 3582(c)(2) bestows on district courts

the power to reduce a sentence like Mr. White's—namely, one in which a subsequently

modified guideline range was employed during the calculation of an upward departure

but was not used in calculating the guideline range for the defendant's underlying crime

of conviction. Reviewing de novo the scope of the district court's authority to reduce a

term of imprisonment under § 3582(c)(2), see Graham, 704 F.3d at 1277, we conclude

that it does not.[3]

---

[3] In denying Mr. White's motion, the district court held that Mr. White was "not eligible" for a sentenced reduction under § 3582(c)(2). R. Vol. 1 at 144-45. Although we speak herein of a district court's § 3582(c)(2) jurisdiction as a function of the court's authority to grant a sentence reduction—and not as a function of the defendant's eligibility to receive such a reduction—we find no error in the district court's alternative terminology. The policy statement governing § 3582(c)(2) demonstrates that the Sentencing Commission itself interposes the two concepts, see U.S.S.G. § 1B1.10 cmt. n.1(A) ("Eligibility for consideration under 18 U.S.C. 3582(c)(2) is triggered only by . . . . Accordingly, a reduction in the defendant's term of imprisonment is not authorized . . . ." (emphasis added)), and many courts, including the Supreme Court, have followed suit. See Dillon v. United States, 560 U.S. 817, 826-27 (2010). In this context,

Continued . . .

9

**I.** **Under this court's well-settled precedent, the district court was not authorized to reduce Mr. White sentence under Section 3582(c)(2) because Amendment 750 did not lower the total offense level or criminal history category that served as the foundation for his originally-imposed sentence**

Section 3582(c)(2) provides:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

(emphasis added). This statute represents "a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." Dillon v. United States, 560 U.S. 817, 828 (2010). Following the Supreme Court's lead in Dillon, this court has recognized that § 3582(c)(2) prescribes a two-step inquiry for determining whether a defendant is entitled to have his originally-imposed sentence reduced: the first question, a matter of law, is whether a sentence reduction is even authorized; the second question, a matter of discretion, is whether an authorized

---

Cont.

then, the two concepts appear to represent different sides of the same coin: if a defendant is not eligible for a sentence reduction, then the district court is not authorized to grant one; and if a district court is not authorized to grant a sentence reduction, then the defendant is not eligible to receive one. What's important, in short, is that the district court lacks jurisdiction to reduce the defendant's sentence.

reduction is in fact <u>warranted</u>.  See, e.g., <u>United States v. Battle</u>, 706 F.3d 1313, 1317

(10th Cir. 2013).  Only the first question is at issue in this case.

As the plain language of the statute makes clear, a district court is authorized to

reduce a sentence under § 3582(c)(2) <u>only if</u> the defendant was originally "sentenced to a

term of imprisonment <u>based on a sentencing range</u> that has subsequently been lowered by

the Sentencing Commission." (emphasis added); <u>accord</u> <u>Dillon</u>, 560 U.S. at 825-26

("[T]he provision applies only to a limited class of prisoners—namely, those whose

sentence was based on a sentencing range subsequently lowered by the Commission.").[4]

Under this court's well-settled precedent, "[a] sentence is 'based on a sentencing range'

when the court imposes the sentence after calculating  the sentencing range derived from

the <u>defendant's offense level and criminal-history category</u>."  <u>United States v. Dryden</u>,

563 F.3d 1168, 1170-71 (10th Cir. 2009) (emphasis added).  Put another way, "[i]f a

change in the guidelines would not lower the offense level or criminal-history category of

the defendant . . . then the defendant cannot say that he 'has been sentenced to a term of

imprisonment based on a sentencing range that has subsequently been lowered by the

Sentencing Commission.'"  <u>Id.</u> at 1171.  "[F]or purposes of a sentence modification under

---

[4] The "based on" clause is but one of two necessary but not sufficient conditions that must be satisfied before a district court is authorized to reduce a defendant's sentence under § 3582(c)(2); the other is the requirement that the sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(2). <u>See, e.g.</u>, <u>United States v. Darton</u>, 595 F.3d 1191,1194 (10th Cir. 2010).  Having decided that Mr. White is unable to satisfy the "based on" clause, we have no need to determine whether Mr. White also fails to satisfy the "consistent with" clause.

11

§ 3582(c)(2)," therefore, "the range upon which a sentence is 'based' is, as a matter of law, the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category <u>but prior to any discretionary departures</u>." United States v. Darton, 595 F.3d 1191, 1197 (10th Cir. 2010) (emphasis added).

Applying that definition here, the range upon which Mr. White's sentence was "based" was the 60-month mandatory minimum calculated under U.S.S.G. § 2K2.4—even though the district court ultimately departed upward therefrom, and even though that departure explicitly referenced a since-amended guideline range. To be sure, that <u>enhancement</u> was, in some sense, based on the now-lowered crack cocaine guidelines—in that those guidelines helped to establish the 70-to-87- month figure upon which the sentencing court relied when determining how much additional time to add to Mr. White's guideline sentence. However, his term of imprisonment—and indeed the departure-based enhancement included therein—was based on the unchanged mandatory 60-month figure that accompanied his only crime of conviction. "This holding is mandated by the guidelines' definition of a sentencing departure as well as this court's sentencing framework, which requires a sentencing court first to determine the applicable guideline range before deciding whether to exercise its discretion to impose a non-guideline sentence." Darton, 595 F.3d at 1197. Accordingly, because neither Amendment 750 nor any other amendment to the Guidelines lowered the sentencing

12

range on which Mr. White's sentenced was "based," the district court correctly concluded that it was not authorized to reduce Mr. White's sentence under § 3582(c)(2).[5]

Despite this well-settled understanding of § 3582(c)(2), Mr. White asserts that we must reverse course and construe § 3582(c)(2) so that a district court may grant a sentence reduction, not just when the original sentence was "based on" a since-amended guideline range, but whenever the original sentence "used," "employed," or was in any sense "tied to" that since-amended guideline range. See generally Supp. Aplt. B. at 13-18. According to Mr. White, this more functional understanding of § 3582(c)(2) sentence reductions is mandated, first, by Freeman v. United States, 131 S. Ct. 2685 (2011), and second, by the absurdity doctrine. For the reasons developed below, we disagree.

Despite Mr. White's protestations to the contrary, Freeman in no way conflicts with this court's understanding that, for purposes of § 3582(c)(2), a previously-imposed sentence can never be "based on" a discretionary departure. The question presented in Freeman was "whether defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced 'based on' a Guidelines sentencing range, making them eligible for relief under § 3582(c)(2)." 131 S. Ct. at 2691 (plurality). As we have previously recognized, answering that question "proved fractious

---

[5] Although the district court appears to have denied Mr. White's motion for failing to comply with U.S.S.G. § 1B1.10(a)(2)(b), see R. Vol. 1 at 145—and by extension, therefore, for failing to comply with § 3582(c)(2)'s "consistent with" clause, see supra n.4—"[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Lott, 310 F.3d 1231, 1242 n. 7 (10th Cir. 2002).

for the <u>Freeman</u> Court." <u>Graham</u>, 704 F.3d at 1277. A four-member plurality concluded that a defendant sentenced pursuant to 11(c)(1)(C) agreement is eligible for relief under § 3582(c)(2) so long as the sentencing court relied on the Guidelines when deciding to accept the plea agreement and its attendant "<u>within the guideline ranges</u>" sentence. <u>Freeman</u>, 131 S. Ct. at 2691-93 (emphasis added, internal quotation marks omitted). Writing for herself in a concurrence that "represents the Court's holding," <u>Graham</u>, 704 F.3d at 1278, however, Justice Sotomayor concluded that 11(c)(1)(C) pleas are not "based on" a Guidelines sentencing range whenever the sentencing court "use[s] the Guidelines as a yardstick," 131 S. Ct. at 2696, but only "when the agreement itself employs <u>the particular Guidelines sentencing range applicable to the charged offenses</u> in establishing the term of imprisonment." <u>Id.</u> at 2698 (emphasis added). And because Freeman's particular agreement used his offense level and criminal history category to "produce a sentencing range of 46 to 57 months" and then "employed the 46-month figure at the bottom end of this sentencing range," Justice Sotomayor joined the plurality in concluding that, notwithstanding the intermediary plea agreement, "Freeman's term of imprisonment [was] 'based on a Guidelines sentencing range.'" <u>Id.</u> at 2699-2700.

As the emphasis in the foregoing paragraph makes clear, unlike Mr. White, Mr. Freeman was sentenced to a non-departure based, entirely within the Guidelines term of imprisonment. Unlike Mr. White, therefore, had it not been for the fact that Mr. Freeman's sentence was imposed pursuant to (c)(1)(C) plea, there would have been no question, under our precedent or anyone else's, that Mr. Freeman had "been sentenced to

14

a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," § 3582(c)(2). See Freeman, 131 S. Ct. at 2700 (Sotomayor, J., concurring) ("Thus there can be no doubt that the Guidelines sentencing range originally used to establish Freeman's term of imprisonment 'has subsequently been lowered by the Sentencing Commission,' § 3582(c)(2)."). At issue in Freeman, then, was not whether the Sentencing Commission had amended the range "serv[ing] as the basis or foundation for [Freeman's] term of imprisonment," id. at 2695—that much was undisputed; at issue there was whether a (c)(1)(C) defendant like Mr. Freeman was precluded from seeking relief under § 3582(c)(2) because the sentence was based most immediately upon a (c)(1)(C) plea agreement, even though that plea agreement was based on a guideline range that had later been modified

While the fact that Mr. Freeman had been sentenced to a within-the-Guidelines sentencing range is lost on Mr. White, it was not lost on the Freeman plurality as it explained the role the Guidelines play "[i]n the usual sentencing":

> The Guidelines provide a framework or starting point—a basis, in the commonsense meaning of the term—for the judge's exercise of discretion. Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion. In the usual sentencing, whether following trial or plea, the judge's reliance on the Guidelines will be apparent, for the judge will use the Guidelines as a starting point in the analysis and impose a sentence within that range. Even where the judge varies from the recommended range, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense a basis for the sentence.

15

131 S. Ct. at 2692 (emphasis added, internal citations omitted). Nor was it lost on Justice Sotomayor who expressed a similar understanding of the "based on" requirement outside of the (c)(1)(C) context: "in applying § 3582(c)(2) a court must discern <u>the foundation for the term of imprisonment</u> imposed by the sentencing court . . . in the normal course the district judge's calculation of <u>the Guidelines range applicable to the charged offenses</u> will serve as the basis for the term of imprisonment imposed." 131 S. Ct. at 2695 (emphasis added). Quite apart from abrogating this court's prior precedent, these statements would seem to ratify our understanding that "a departure only exists <u>apart from</u> the applicable guideline range" and, therefore, that "the range upon which a sentence is 'based' is, as a matter of law, the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category but prior to any discretionary departures." <u>Darton,</u> 595 F.3d at 1194, 1197.

Other panels of this court have implicitly held that our pre-<u>Freeman</u> glosses on § 3582(c)(2)'s "based on" clause survive <u>Freeman</u>. <u>See</u> <u>United States v. Samuels</u>, 528 Fed App'x 953, 955-956 (10th Cir. 2013) (unpublished) ("<u>Freeman</u> provides Mr. Samuels with no assistance . . . because . . . the parties did not calculate an agreed-upon sentence based upon the crack cocaine Guidelines . . . . Rather, Mr. Samuels' sentence was based upon the career offender Guidelines provision." (emphasis in original)). <u>See</u> <u>also</u> <u>United States v. Wilson</u>, 493 F. App'x 919, 922 (10th Cir. 2012) (unpublished) ("The record makes clear that Defendant's sentence was based on a statutory mandatory minimum rather than the Guidelines."); <u>United States v. Fields</u>, 500 F. App'x 755, 757 (10th Cir.

16

2012) (unpublished) (same).  For the foregoing reasons, we now make explicit what was implicit in Samuels: Freeman provides no basis for overruling either Darton or Dryden, and those decisions therefore remain binding in this circuit.  In so holding, we note that every circuit to consider Freeman's effect on its non-(c)(1)(C) "based on" jurisprudence has agreed.  See United States v. Thompson, 682 F.3d 285, 290-91 (3d Cir. 2012); United States v. Barber, 517 F. App'x 270, 272 (5th Cir. 2013) (unpublished), cert. denied, 134 S. Ct. 212, 187 L. Ed. 2d 160 (2013); United States v. Drewery, 531 F. App'x 675, 679-80 (6th Cir. 2013) (unpublished), cert. denied, 134 S. Ct. 712, 187 L. Ed. 2d 572 (2013); United States v. Bonds, 468 F. App'x 620, 620 (7th Cir. 2012) (unpublished); United States v. Harris, 688 F.3d 950, 955 (8th Cir. 2012); United States v. St. James, 13-10202, 2014 WL 1409995 at *1 (9th Cir. Apr. 14, 2014); United States v. Tellis, 748 F.3d 1305, 1309-10 (11th Cir. 2014).[6]

In a last-ditch effort to obtain a sentence reduction, Mr. White asserts that, even if Freeman does not alter the fact that a previously-imposed sentence can never be "based on" a discretionary departure, we cannot enforce that rule under the circumstances

---

[6] Once Mr. White's erroneous understanding of Freeman falls away, so too do his plain language, nondelegation, and separation of powers challenges to U.S.S.G. § 1B1.10, see Supp. Aplt. B. at 24-40, 46-52.  Premised on his mistaken belief that he satisfies the "based on" clause post-Freeman, Mr. White advanced those arguments in hopes of convincing this court to strike down what he believed was the only remaining barrier to his receiving a sentence reduction under § 3582(c)(2).  But having held that Mr. White does not satisfy the "based on" clause even after Freeman—and thus that Mr. White is not eligible for a sentence reduction no matter what—the validity of U.S.S.G. § 1B1.10 is simply inapposite.

17

presented in this case because "applying the statutory scheme to withhold from [him] the possibility of a sentence reduction where such possibility could not have been withheld had he been convicted of [the underlying crack distribution offense], rather than having that charge dismissed, produces an absurd result." Supp. Aplt. B. at 44. In effect, in other words, Mr. White is requesting that we create out of whole cloth an exception to the rule that a sentence cannot be based on a discretionary departure where, like here, the departure was an upward departure for dismissed or uncharged conduct under § 5K2.21. While we empathize with Mr. White's inability to obtain relief from the injustice wrought by the now infamous 100-to-1 crack-to-powder cocaine sentencing disparity—and urge Congress to reconsider excluding defendants like Mr. White—we cannot agree that applying the law as written will produce an absurd result.

Although Mr. White undoubtedly believes that barring defendants like him from seeking sentence reductions is absurd, he has not pointed us, as he must, to any evidence suggesting that <u>Congress</u> would also see it that way. See <u>Robbins v. Chronister</u>, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc) ("[W]e can apply the [absurdity] doctrine only when . . . the result would be 'so bizarre that Congress could not have intended it.'"). Indeed, both this court and the Sentencing Commission have already concluded that Congress actually intended <u>all discretionary departures</u> to be outside the scope of a § 3582(c)(2) sentence reduction. See <u>Darton</u>, 595 F.3d at 1197 ("[T]he range upon which a sentence is 'based' is, as a matter of law, the range produced . . . prior to <u>any</u> discretionary departures." (emphasis added)); U.S.S.G. § 1B1.10 cmt. n.1(A) ("Eligibility

18

for consideration under 18 U.S.C. 3582(c)(2) is triggered only by an amendment listed in subsection (c) that lowers . . . the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." (emphasis added)).  In addition to the fact that Congress has acquiesced in this understanding of its intent, another problem with Mr. White's absurdity argument is that there is simply no way to read a § 5K2.21 exception into the general rule without bringing down the rule itself.  Cf. Darton, 595 F.3d at 1194 ("The justification for a downward departure has no bearing on the fact that a departure is, as a matter of law, a sentence outside the 'applicable guideline range.'").  As the Supreme Court has recognized, in short, "[i]t is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 576 (1982).[7]

---

[7] To the extent that Mr. White asserts an as-applied due process claim apart from his underlying absurdity argument—we are not convinced that the arguments are truly distinct—we note simply that the Supreme Court has also made clear that there is "no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments." Dillon, 560 U.S. at 828.

**CONCLUSION**

For the foregoing reasons, the district court did not err in holding that Mr. White was ineligible to receive a sentence reduction under § 3582(c)(2). While we discern no error in the district court's analysis, dismissal for lack of jurisdiction rather than denial on the merits is the appropriate disposition of Mr. White's § 3582(c)(2) motion. See Graham, 704 F.3d at 1279. We therefore VACATE the order denying the motion and REMAND with instructions to dismiss the motion for lack of jurisdiction.

12-3299, *United States v. White*

**HARTZ**, Circuit Judge, concurring:

I agree with the majority opinion that Mr. White is not eligible for resentencing and that this result is quite unfortunate. I would reach the result, however, on a slightly different path. In light of *Freeman v. United States*, 131 S. Ct. 2685 (2011), I am not as confident as the majority that Mr. White's sentence was not "based on" the abrogated crack-cocaine guideline. But even if it was "based on" that guideline, Mr. White is barred from relief under 18 U.S.C. § 3582(c)(2), which requires that any reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement in USSG § 1B1.10(a)(2)(B) states that a reduction is permissible only if the retroactive guideline change "lower[s] the defendant's applicable guideline range"; and application note 1(A) to § 1B1.10 makes explicit that the applicable guideline range is the range based on the defendant's offense level and criminal-history category before any departure or variance.

Although this court has opinions indicating that § 1B1.10(a)(2)(B) does no more than paraphrase § 3582(c)(2), *see United States v. Darton*, 595 F.3d 1191, 1194 (10th Cir. 2010); *United States v. Dryden*, 563 F.3d 1168, 1170–71 (10th Cir. 2009), the statements in those opinions are based on an interpretation of the statute that predates, and may be inconsistent with, *Freeman*. To the extent that the majority opinion is contrary to *Freeman*, what we said in *Darton* and *Dryden* is undermined. I see no merit to Mr. White's contentions that the above interpretation of the guidelines and application

note is absurd (even if its application here is troublesome) or is contrary to either § 3582(c)(2) or constitutional principles of nondelegation and separation of powers.  I would note, however, that if the Sentencing Commission shares this panel's view of the unfairness of the result here, it can change its policy statement and make it retroactive.